UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 08-385-GWU


CHRISTINE COMBS,                                            PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities?  If not, a
    finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine
    whether the claimant's severe impairment(s) or combination of
    impairments meets or equals in severity an impairment listed
    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

08-385  Christine Combs

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-385  Christine Combs

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

08-385  Christine Combs

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

08-385  Christine Combs

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

08-385  Christine Combs

accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Christine Combs, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of coronary artery bypass grafting and stenting "with good results," generalized arthritis, obesity with steady weight loss, and diabetes mellitus.  (Tr. 20).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs in the economy, and therefore was not entitled to benefits.  (Tr. 20-6).  The Appeals Council declined to review, despite the submission of new evidence of medical problems occurring before the date of the ALJ's decision (Tr. 7-10), and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 52, ninth grade education, and no past relevant work experience could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, standing and walking six hours and sitting six hours in an eight-hour day, and had non-exertional restrictions of an inability to climb ladders, ropes, and scaffolds, to occasionally climb ramps and stairs, and a need to avoid temperature extremes, hazardous machinery, and unprotected heights.  (Tr. 491).

7

The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability in her October 26, 2005 SSI application beginning on September 1, 2002 due to heart problems, arthritis, stomach problems, cholesterol, high blood pressure, and bowel problems.  (Tr. 58).  At the hearing, she described having chest pain as often as every other day, for which she had to take nitroglycerin.  (Tr. 473-4).  She did not drive, and her ankles hurt too much for her to walk for exercise.  (Tr. 471, 477-8).  She was able to visit her mother in a nursing home once or twice a week and sang in her church choir, but had few other activities.  (Tr. 478, 480).  She had some breathing problems, and had stopped smoking in 2002.  (Tr. 476, 482).  Swelling in her ankles caused a need to prop her feet up frequently.  (Tr. 484).  She felt weak and fatigued even when she did not have chest pain.  (Tr. 487).

Medical evidence in the transcript includes a stress test conducted by the plaintiff's treating family physician, Dr. Mel Abordo, in September, 2002, showing a "small/medium-sized area of fixed perfusion defect."

Records from the plaintiff's treating cardiologist, Dr. David Cassidy, indicate that the plaintiff was given a coronary artery bypass graft in September, 2002, and in March, 2004, stents were placed for recurrent anginal symptoms.  (Tr. 229-30, 374).  She returned to Dr. Cassidy in April, 2005 with recurrent angina, but a cardiac catheterization showed no evidence of restenosis or worsening coronary artery disease.  (Tr. 214-15, 376).  A stress test was also normal.  (Tr. 209).  In October, 2006, Dr. Cassidy saw his patient again and she reported she had been doing reasonably well with no recurrent angina.  (Tr. 195, 373).  Other than noting a systolic ejection murmur, his examination showed no abnormalities, and he suggested continuation of medications and a routine stress test.  (Id.).  The stress test was obtained the next day and was normal.  (Tr. 196).

Office notes from Dr. Abordo indicate that the plaintiff was doing well from a cardiac standpoint in February, 2006, although she complained of joint pains and ankle swelling.  (Tr. 272).  Her blood pressure was elevated and the physician noted tenderness in the knee and left ankle joints.  (Id.).  Her weight at the time was 283 pounds.  The physician prescribed medication for arthritis.  By May, 2006, the plaintiff's musculoskeletal problems continued, and she was complaining of recurring chest pain radiating to her left arm every week.  (Tr. 270).  An electrocardiogram showed non-specific T-wave abnormalities and a medication was added for her increased blood pressure.  (Id.)  In July of 2006, the physician noted

right lower extremity edema and new onset diabetes mellitus.  (Tr. 266).  He suggested scheduling an echocardiogram.  The plaintiff continued to describe similar problems, particularly joint pain, in 2007.  (E.g., Tr. 363-5).

Dr. Rita Ratliff conducted a consultative examination on February 28, 2006 and noted the plaintiff's history, although it is not clear that she had any records to review.  (Tr. 163).  Her examination showed that the plaintiff weighed 283 pounds at a height of 66.5 inches, but she was in no acute distress, had a normal gait, and a largely normal physical examination otherwise except for a reduced range of motion of the hips "secondary to obesity" and a lack of peripheral pulses in the lower extremities.  (Tr. 164-5).[1]  Dr. Ratliff found no evidence of congestive heart failure. She did not specify restrictions but stated that the plaintiff could perform activities as tolerated by obesity and pain.  (Tr. 166).  She suggested obtaining a pulmonary function test, but when it was obtained the results were normal.  (Tr. 160).

A state agency physician, Dr. Allen Dawson, reviewed the evidence in April, 2006 and found the plaintiff limited to light level exertion with occasional climbing of ladders, ropes, and scaffolds and a need to avoid concentrated exposure to extreme cold and heat.  (Tr. 168-74).  He wrote that the claimant's allegations of arteriosclerotic heart disease were "quite well documented," as was her morbid

---

[1]At the time of the November, 2007 hearing, the plaintiff's weight was down to 230 pounds due to a "cardiac diet."  (Tr. 470-1).

obesity.  (Tr. 172).  He stated that Dr. Ratliff's opinion was being given no weight "since it discounts the rather complex history of heart trouble that the claimant has had as well as her morbid obesity."  (Tr. 173).  Dr. Timothy Gregg affirmed Dr. Dawson's opinion without any additional commentary in June, 2006 (Tr. 178-84), while another assessment by Maurice Harris in July, 2006 added limitations of occasionally climbing ramps and stairs, never climbing ladders, ropes, and scaffolds, and avoiding concentrated exposure to hazards (Tr. 186-92).  It was the latter assessment that was followed by the ALJ.

Subsequently, the plaintiff submitted a letter from Dr. Abordo dated May 4, 2007 which indicated that her history of diabetes mellitus, essential hypertension, arthritis, hyperlipidemia, obesity, and coronary artery disease rendered her "unable to perform her job duties."  (Tr. 368).  On August 30, 2007, Dr. Abordo submitted two mutually contradictory assessments.  Although both clearly limited the plaintiff to less than full-time work, the first form stated that she could work no hours per day, while the second stated that she could work for one hour.  (Tr. 370-1).  The second assessment stated that she could stand and sit for 15 minutes at a time but "none" in the work day.  There is no explanation for the discrepancies.

An assessment form from Dr. Cassidy was also submitted, although the date is almost illegible.  It states that the plaintiff had anginal pain, a history of myocardial infarction, weakness and fatigue due to her cardiac condition, and recurrent

arrythymias.  (Tr. 377).  She was limited to working six hours a day, standing 30 minutes at one time, lifting 20 pounds occasionally and 10 pounds frequently, "frequently" raising her arms above shoulder level, and would need to elevate her legs "occasionally" during an eight-hour work day.  (Id.).  When these restrictions were presented to the VE, she responded that they would preclude full-time competitive employment.  (Tr. 492).

The ALJ declined to accept the treating physician opinions after considering the factors in 20 C.F.R. § 416.927.  Primarily, he found that they were not supported by objective medical findings because of a number of normal or near normal examinations, because of the plaintiff's conservative treatment regimen, and because the results of her cardiac testing showed no evidence of recurrent angina, restenosis, or recurrent artery disease.  He stated that he accepted the opinions of the state agency reviewers because they were well supported by objective medical findings and not contradicted by substantial medical evidence or any credible treating source opinion.  (Tr. 24-5).

Social Security Ruling (SSR) 96-6p discusses circumstances in which the opinions of state agency medical consultants may be given greater weight than the opinions of treating or examining sources and specifies that such sources "may" be entitled to greater weight than a treating source if the "consultant's opinion is based on a review of a complete case record that includes a medical report from a

08-385  Christine Combs

specialist in the individual's particular impairment which provides more detail and comprehensive information than what was available to the individual's treating source."  Such was not the case here.  While the opinions of Dr. Abordo are somewhat dubious due to the internal inconsistencies mentioned above, Dr. Cassidy's report had no internal contradictions, and he was the plaintiff's treating cardiologist.  The Commissioner's regulations provide that the opinion of a specialist is generally given greater weight than a source who is not a specialist.  20 C.F.R § 416.927(d)(5).  The same regulation also requires an opinion to be supportable, the ground on which the ALJ primarily discounted Dr. Cassidy's opinion.  However, the lead state agency reviewer, Dr. Dawson, had already commented on the plaintiff's complex history of heart trouble and dismissed the opinion of the only other examining source, Dr. Ratliff, because it did not take this into account.  None of the state agency reviewers had all of the evidence available to them, nor did they see Dr. Cassidy's opinion.  As a treating specialist, no professional was in a better position than Dr. Cassidy to assess the plaintiff's restrictions.  While it is conceivable that a reviewing medical source with access to the entire record could provide substantial evidence to overcome Dr. Cassidy's opinion, no such medical expert testimony was obtained.   Accordingly, a remand will be required for further consideration.

08-385  Christine Combs

The court notes in passing that evidence submitted to the Appeals Council shows that the plaintiff was hospitalized in late November, 2007, prior to the ALJ's January 8, 2008 decision, with further complaints of chest pain, and Dr. Cassidy found that her left anterior descending artery was 85 percent occluded and required the placement of a stent.  (Tr. 379, 403).  The plaintiff has not requested a remand under Sentence Six of 42 U.S.C. § 405(g) for consideration of the new evidence, and it is not part of this court's inquiry into whether substantial evidence supported the ALJ's decision.  However, it would be relevant on remand, particularly since the Appeals Council noted that the plaintiff was found to be disabled on a subsequent application beginning January 9, 2008.  (Tr. 8).

The decision will be remanded for further consideration.

This the 11th day of August, 2009.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**